IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERRY INGRAM,

    PLAINTIFF,

VS.                                                                CV NO.:

DESHAZO LLC,

    DEFENDANT.                                     JURY TRIAL DEMANDED

COMPLAINT

## I. JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202 and 29 U.S.C. § 621. This is a suit authorized and instituted pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, 626(d)(1), *et seq.* (ADEA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 42 U.S.C. § 12101 et seq. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

3. This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, *et seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

5. Plaintiff, Sherry Sue Ingram, (hereinafter "Plaintiff") is a resident of Alabaster, Shelby County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

6. Defendant DeShazo LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. §

621(a)(2), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12101, *et seq.* Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite. Therefore, this Court has personal jurisdiction over Defendant.

### III. STATEMENT OF FACTS

7. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 6 above.

8. Defendant hired Plaintiff on or about January 2, 1992.

9. Defendant terminated Plaintiff's employment on July 11, 2019.

10. At the time Defendant terminated Plaintiff's employment, Plaintiff was forty-seven (47) years of age.

11. At the time of Plaintiff's termination, Defendant employed Plaintiff as its Office Manager.

12. During March 2019, Plaintiff took vacation days to undergo a surgery and recovery period for an ongoing medical condition that started in June 2017.

13. Plaintiff previously underwent surgery during June 2017, November 2017, and June 2018.

14. Plaintiff had another surgery related to her ongoing medical condition that was scheduled for July 18, 2019.

15. In late June 2019, as soon as her physician scheduled the procedure, Plaintiff notified Defendant about her July 18, 2019 surgery and her need for vacation days.

16. Defendant's health insurance program became "self-insured" on or about June 1, 2019.

17. The company is aware of the cost of Plaintiff's medical care.

18. Defendant employs or employed Kevin Calma.

19. Calma worked as Plaintiff's supervisor from 2016 through the termination of her employment.

20. On or about June 25, 2019, Plaintiff notified Calma of her need to take vacation for her July 18, 2019 surgical procedure and recovery.

21. Calma was fully aware of Plaintiff's previous surgical history and the need for the surgical procedures.

22. Upon information or belief, based on Plaintiff's multiple surgeries that occurred from 2017 through 2019, Calma perceived Plaintiff as being disabled.

23. On July 11, 2019, Calma terminated Plaintiff's employment.

24. Calma stated Defendant terminated Plaintiff's employment because she failed to clock out for a scheduled lunch break.

25. Defendant has had a long custom of allowing employees to correct mistakes in their time card, such as failing to clock-out for a lunch break, or clock-

in following a lunch break, so long as the error was corrected the Friday before the time is submitted to Defendant's payroll department.

26. Defendant runs its payroll every week.

27. Defendant's attendance policy requires that a first offense receives a verbal warning with written documentation to be placed in an employee's personnel file, a second offense receives a written warning and possible suspension, and a third offense allows for suspension and possible termination.

28. Plaintiff received a verbal warning related to a time clock issue in 2018.

29. Defendant did not issue Plaintiff a written warning.

30. Defendant did not suspend Plaintiff.

31. Defendant terminated Plaintiff's employment despite its discipline policy.

32. When Calma terminated Plaintiff's employment, he stated Plaintiff had been previously warned.

33. Plaintiff advised Calma of the policies stated above.

34. Calma responded, "Sorry, upper management says that's it."

35. Younger employees, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

36. Calma did not terminate their employment.

37. Employees without a history of medical issues, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

38. Calma did not terminate their employment.

39. Younger employees, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

40. Calma did not terminate their employment.

41. Employees without a history of medical issues, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

42. Calma did not terminate their employment.

43. Defendant employed/hired Cheyenne Foster.

44. Shortly after Defendant terminated Plaintiff's employment, Defendant placed Cheyenne Foster in Plaintiff's former position.

## IV. COUNT ONE – Age Discrimination (ADEA) – Tangible Adverse Job Action

45. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 44 above.

46. Defendant hired Plaintiff on or about January 2, 1992.

47. Defendant employed Plaintiff as its Office Manager.

48. Defendant terminated Plaintiff's employment on July 11, 2019.

49. At the time Defendant terminated Plaintiff's employment, Plaintiff was forty-seven (47) years of age.

50. Defendant employed Cheyenne Foster.

51. Shortly after Defendant terminated Plaintiff's employment, Defendant placed Cheyenne Foster in Plaintiff's former position.

52. Foster is substantially younger than Plaintiff.

53. Calma stated Defendant terminated Plaintiff's employment because she failed to clock out for a scheduled lunch break.

54. Defendant has had a long custom of allowing employees to correct mistakes in their time card, such as failing to clock-out for a lunch break, or clock-in following a lunch break, so long as the error was corrected the Friday before the time is submitted to Defendant's payroll department.

55. Defendant runs its payroll every week.

56. Defendant's attendance policy requires that a first offense receives a verbal warning with written documentation to be placed in an employee's personnel file, a second offense receives a written warning and possible suspension, and a third offense allows for suspension and possible termination.

57. Plaintiff received a verbal warning related to a time clock issue in 2018.

58. Defendant did not issue Plaintiff a written warning.

59. Defendant did not suspend Plaintiff.

60. Defendant terminated Plaintiff's employment despite its discipline policy.

61. When Calma terminated Plaintiff's employment, he stated Plaintiff had been previously warned.

62. Plaintiff advised Calma of the policies stated above.

63. Calma responded, "Sorry, upper management says that's it."

64. Younger employees, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

65. Calma did not terminate their employment.

66. Younger employees, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

67. Calma did not terminate their employment.

68. Defendant's actions in terminating Plaintiff, while not terminating employees under age 40 for nearly identical conduct, was a violation of the ADEA.

69. As a result of Defendant's violation of ADEA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V. COUNT TWO - Americans with Disabilities Act - Termination

70. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 69 above as if fully set forth herein.

71. Defendant hired Plaintiff on or about January 2, 1992.

72. During March 2019, Plaintiff took vacation days to undergo a surgery and recovery period for an ongoing medical condition that started in June 2017.

73. Plaintiff previously underwent surgery during June 2017, November 2017, and June 2018.

74. Plaintiff had another surgery related to her ongoing medical condition that was scheduled for July 18, 2019.

75. In late June 2019, as soon as her physician scheduled the procedure, Plaintiff notified Defendant about her July 18, 2019 surgery and her need for vacation days.

76. Defendant's health insurance program became "self-insured" on or about June 1, 2019.

77. The company is aware of the cost of Plaintiff's medical care.

78. Defendant employed Plaintiff as its Office Manager.

79. Plaintiff was qualified for the position of Office Manager without the need of any reasonable accommodation.

80. Defendant terminated Plaintiff's employment on July 11, 2019.

81. Calma stated Defendant terminated Plaintiff's employment because she failed to clock out for a scheduled lunch break.

82. Defendant has had a long custom of allowing employees to correct mistakes in their time card, such as failing to clock-out for a lunch break, or clock-

in following a lunch break, so long as the error was corrected the Friday before the time is submitted to Defendant's payroll department.

83. Defendant runs its payroll every week.

84. Defendant's attendance policy requires that a first offense receives a verbal warning with written documentation to be placed in an employee's personnel file, a second offense receives a written warning and possible suspension, and a third offense allows for suspension and possible termination.

85. Plaintiff received a verbal warning related to a time clock issue in 2018.

86. Defendant did not issue Plaintiff a written warning.

87. Defendant did not suspend Plaintiff.

88. Defendant terminated Plaintiff's employment despite its discipline policy.

89. When Calma terminated Plaintiff's employment, he stated Plaintiff had been previously warned.

90. Plaintiff advised Calma of the policies stated above.

91. Calma responded, "Sorry, upper management says that's it."

92. Employees without a history of medical issues, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

93. Calma did not terminate their employment.

94. Employees without a history of medical issues, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

95. Calma did not terminate their employment.

96. Defendant's actions in terminating Plaintiff, while not terminating employees for nearly identical conduct that were not perceived as disabled, was a violation of the Americans with Disabilities Act.

97. As a result of Defendant's violation of Americans with Disabilities Act, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI. COUNT THREE - FMLA INTERFERENCE

98. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 97 above as if fully set forth herein.

99. During the 12-month period prior to July 18, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

100. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's July 18, 2019, leave.

101. During the week of July 18, 2019, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

102. On June 25, 2019, Plaintiff provided notice of foreseeable FMLA leave to Kevin Calma.

103. Plaintiff provided notice of her unforeseeable need of FMLA leave the same day or next business day after the need for FMLA leave arose and as soon as practicable due to the discovery of information regarding the need for commencing the FMLA leave.

104. Prior to June 25, 2019, Plaintiff had never previously informed Defendant of the need for FMLA leave.

105. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

106. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

107. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

108. Defendant interfered with Plaintiff's FMLA rights by not allowing her to commence leave and instead terminated her employment.

109. On July 11, 2019, Calma terminated Plaintiff's employment.

110. Calma stated Defendant terminated Plaintiff's employment because she failed to clock out for a scheduled lunch break.

111. Defendant has had a long custom of allowing employees to correct mistakes in their time card, such as failing to clock-out for a lunch break, or clock-in following a lunch break, so long as the error was corrected the Friday before the time is submitted to Defendant's payroll department.

112. Defendant runs its payroll every week.

113. Defendant's attendance policy requires that a first offense receives a verbal warning with written documentation to be placed in an employee's personnel file, a second offense receives a written warning and possible suspension, and a third offense allows for suspension and possible termination.

114. Plaintiff received a verbal warning related to a time clock issue in 2018.

115. Defendant did not issue Plaintiff a written warning.

116. Defendant did not suspend Plaintiff.

117. Defendant terminated Plaintiff's employment despite its discipline policy.

118. When Calma terminated Plaintiff's employment, he stated Plaintiff had been previously warned.

119. Plaintiff advised Calma of the policies stated above.

120. Calma responded, "Sorry, upper management says that's it."

121. Other employees, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

122. Calma did not terminate their employment.

123. Employees without a history of medical issues, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

124. Calma did not terminate their employment.

125. Other employees, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

126. Calma did not terminate their employment.

127. Employees without a history of medical issues, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

128. Calma did not terminate the employment of persons watching movies on company time.

129. Defendant's employees, and specifically Kevin Calma, had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through her doctor and that she had underwent previous treatment causing her to miss work during June 2017, November 2017, June 2018 and March 2019.

130. Defendant's management employees, including but not limited to Kevin Calma, made the decision to terminate Plaintiff's employment, in whole or part, because of Plaintiff's need to FMLA rights.

131. As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VII. COUNT FOUR - FMLA RETALIATION

132. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 136 above as if fully set forth herein.

133. During the 12-month period prior to July 18, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

134. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's July 18, 2019, leave.

135. During the week of July 18, 2019, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

136. On June 25, 2019, Plaintiff provided notice of foreseeable FMLA leave to Kevin Calma.

137. Plaintiff provided notice of her unforeseeable need of FMLA leave the same day or next business day after the need for FMLA leave arose and as soon as practicable due to the discovery of information regarding the need for commencing the FMLA leave.

138. Prior to June 25, 2019, Plaintiff had never previously informed Defendant of the need for FMLA leave.

139. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

140. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

141. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

142. Defendant interfered with Plaintiff's FMLA rights by not allowing her to commence leave and instead terminated her employment.

143. On July 11, 2019, Calma terminated Plaintiff's employment.

144. Calma stated Defendant terminated Plaintiff's employment because she failed to clock out for a scheduled lunch break.

145. Defendant has had a long custom of allowing employees to correct mistakes in their time card, such as failing to clock-out for a lunch break, or clock-in following a lunch break, so long as the error was corrected the Friday before the time is submitted to Defendant's payroll department.

146. Defendant runs its payroll every week.

147. Defendant's attendance policy requires that a first offense receives a verbal warning with written documentation to be placed in an employee's personnel file, a second offense receives a written warning and possible suspension, and a third offense allows for suspension and possible termination.

148. Plaintiff received a verbal warning related to a time clock issue in 2018.

149. Defendant did not issue Plaintiff a written warning.

150. Defendant did not suspend Plaintiff.

151. Defendant terminated Plaintiff's employment despite its discipline policy.

152. When Calma terminated Plaintiff's employment, he stated Plaintiff had been previously warned.

153. Plaintiff advised Calma of the policies stated above.

154. Calma responded, "Sorry, upper management says that's it."

155. Other employees, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

156. Calma did not terminate their employment.

157. Employees without a history of medical issues, specifically employees working under Calma, have failed to clock-in and/or clock-out properly.

158. Calma did not terminate their employment.

159. Other employees, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

160. Calma did not terminate their employment.

161. Employees without a history of medical issues, specifically employees working under Calma, have also been caught stealing time by streaming movies on-the-clock.

162. Calma did not terminate the employment of persons watching movies on company time.

163. Defendant's employees, and specifically Kevin Calma, had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through her doctor and that she had underwent previous treatment causing her to miss work during June 2017, November 2017, June 2018 and March 2019.

164. Defendant's management employees, including but not limited to Kevin Calma, made the decision to terminate Plaintiff's employment, in whole or part, because of Plaintiff's need to FMLA rights.

165. As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

166. As a result of Defendant's discriminatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the ADEA;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Americans with Disabilities Act;

C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

D. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

E. Award her back pay, together with employment benefits, front pay, compensatory damages (as to the Americans with Disabilities Act only); punitive damages (as to the Americans with Disabilities Act only); liquidated damages (as to the ADEA and FMLA claim); special damages; nominal damages;

F. Attorneys' fees and costs;

G. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 626, 29 U.S.C. § 2601 *et seq.*, and 42 U.S.C. § 12101 *et seq.* that the actions of Defendant violated the law; and,

H. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

**OF COUNSEL**:
ALLEN D. ARNOLD, Attorney at Law
A Member of The Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, AL 35205
(205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
DeShazo LLC
c/o Guy Mitchell
190 Airpark Industrial Road
Alabaster, AL 35007